217 N.J. Super. 629 (1987)
526 A.2d 744
IN THE MATTER OF THE VOLUNTARY COMMITMENT OF G.M.
Superior Court of New Jersey, Chancery Division Family Part, Essex County.
Decided March 10, 1987.
*630 Steven J. Bercik, Jr. for the voluntary mental patients (Alfred A. Slocum, Public Advocate, attorney).
Denise P. Coleman for Essex County (H. Curtis Meanor, Acting Essex County Counsel, attorney).
RUDD, J.S.C.
G.M., the patient herein, was admitted to the Essex County Hospital Center by application for temporary commitment dated October 8, 1981. By order of the Honorable Paul T. Murphy, J.J.D.R.C. dated October 21, 1981, G.M. was detained in the hospital under a temporary class c order, N.J.S.A. 30:4-38, pending a final hearing to be held on November 9, 1981. On the date of the final hearing, Judge Murphy entered a final order of commitment. Thereafter, several review-of-commitment hearings were held on February 1, 1982, May 3, 1982, May 9, 1983, May 8, 1984, August 7, 1984 and November 7, 1984. G.M.'s commitment status remained unchanged throughout these review proceedings. On the next scheduled commitment-review date, April 9, 1985, the court was advised that G.M. had signed papers for voluntary admission to the Essex County Hospital Center on April 8, 1985. Hence, on the latter date, G.M.'s patient status in the hospital center changed from *631 that of a committed patient to that of one voluntarily admitted to that facility.
On the April 9, 1985 hearing date, the court noted the voluntary status and scheduled a review in six months. Similar orders were issued by the court on October 8, 1985, April 9, 1986 and October 7, 1986.
The question in this case is whether the court has the power and is correct in ordering such a review.
In the legal area of commitments to mental institutions, "slipping through the cracks" is a terror oft noted in the classic literature which is our heritage. Though it is an administrative problem, we have required periodic judicial review to prevent it. In re S.L., 94 N.J. 128 (1983); R. 4:74-7(f); State v. Fields, 77 N.J. 282 (1978).
And correctly so. How easily a patient, unfortunate enough to be hospitalized for mental disorder, having lost contact with reality, can also lose contact with family, guardian, lawyer, amicus of any kind.
But what to review? The categories of those unfortunates need reciting and take some understanding. There are "Committed Patients"  those with mental disorder, who may be dangerous to others or themselves. There are "Committed Patients"  no longer dangerous but needing treatment. There are "Discharged Patients"  not dangerous, needing treatment, who are awaiting placement and referred to as "Confined Pending Placement" (formerly "Discharged Pending Placement"). All these are included in the group of patients for whom judicial review is required. R. 4:74-7(f); In re S.L., supra, 94 N.J. at 140-142.
There is another category of patients called "Voluntary Patients"  those in the hospital because for one reason or another (length of stay, infirmity, senility, without family, disassociated one way or another, incapable of caring for themselves, on the brink of madness) of whom the county says no review is *632 necessary. The county has no fear they will be "lost in the cracks."
The public advocate argues that they are no different than other patients and cites precedent for such review. State v. Krol, 68 N.J. 236 (1975); In re S.L., supra; State v. Fields, supra. New York State has held that review is necessary for voluntary patients, In re Buttonow, 23 N.Y.2d 385, 393, 244 N.E.2d 677 (Sup.Ct. 1968). On the other hand the county asks that no review take place and argues for freedom of choice for the patients, and freedom from responsibility for the county.
I agree with the public advocate. There should be a review of the status of "Voluntary Patients" by the judiciary.
I find no difference in the vulnerability of the voluntary patient "to being lost in the cracks" as against the vulnerability of committed or pending placement patients being "lost in the cracks." They are all disordered or disoriented or in need of treatment and care. They cannot, any of them, stand alone and speak for themselves. They need help. A lack of statutory definition that they need help must not prevent us from giving it to them under the general equity powers. They look, sound and talk like, and are like their helpless "Committed" or "Confined" colleagues. What good is the sieve of judicial review if any of the helpless volunteers can still leak through? What good is all our effort in preventing patients from being "lost in the cracks" if such a hapless category as the so-called "volunteers" is subject to being lost?
Judicial review of voluntary patients is needed.
It is ordered.